## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | ) |
| | ) |
| **JLK Construction, LLC,** | ) Case No. 23-50034 |
| | ) |
| Debtor. | ) Chapter 11 |
| | ) |
| | ) |
| | ) |
| | ) |
| **JLK Construction, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No. 23-4033 |
| | ) |
| **GFE NY, LLC,** | ) |
| **White Road Capital LLC Series 120785,** | ) |
| **White Road Capital, LLC, Series 127009,** | ) |
| **Premium Merchant Funding 18, LLC,** | ) |
| **Abe Burger,** | ) |
| **Samuel A. Brugman,** | ) |
| **Zac Bena, and** | ) |
| **Boost Capital Group, LLC,** | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART
## AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff JLK Construction, LLC filed its second amended adversary complaint

[Dkt. No. 80] against several defendants, asserting six counts under state and federal

law.  Movants GFE NY, LLC; White Road Capital, LLC Series 120785; White Road

Capital, LLC Series 127009; Premium Merchant Funding 18, LLC (PMF), Abe

Burger, and Samuel Brugman ask the court to dismiss counts one (for declaratory

relief) against PMF, Burger, and Brugman; count three (for racketeering) against all named defendants; and counts four through six[1] (for the avoidance and recovery of fraudulent transfers) against Burger and Brugman. Among other things, the movants argue dismissal is appropriate under Rule 12(b)(6) because JLK fails to state claims upon which relief can be granted. JLK opposes dismissal and requests leave to amend any count the court dismisses.

For the reasons set forth below, the court DENIES the movants' motion to dismiss count one (declaratory relief), GRANTS the motion to dismiss count three (racketeering) as to all movants with prejudice, and GRANTS the movants' motion to dismiss counts four through six (for the avoidance and recovery of fraudulent transfers) against PMF and Brugman. The court also GRANTS JLK's request for leave to amend counts four, five, and six.

## BURDEN OF PROOF

The movants bear the burden to establish that the challenged counts of JLK's adversary complaint are insufficient. *See Gill Constr., Inc. v. 18th & Vine Auth.*, No. 05-0608-CV-W-SOW, 2006 WL 8438149, at *1 (W.D. Mo. July 11, 2006) (assigning burden of proof to party requesting dismissal under Rule 12(b)(6)).

## BACKGROUND

The court derives the following background information from the amended complaint and attached exhibits, statements counsel for each party made at oral

---

[1] JLK misidentifies these counts as counts five through seven in the body of the second amended complaint but identifies them as counts four through six in the prayer for relief. For the sake of simplicity, the court refers to JLK"s counts for the avoidance and recovery of fraudulent transfers as counts four through six.

argument, and the record in this adversary proceeding and JLK's chapter 11 bankruptcy case.[2]

Plaintiff JLK Construction, LLC is an excavation, dirt-moving, and concrete flatwork business.[3]  Defendants GFE NY, LLC; White Road Capital, LLC, Series 120785; and White Road Capital, LLC, Series 127009 are entities that provided funding to JLK through merchant cash advance (MCA) transactions. Defendant PMF allegedly agreed to provide JLK consulting services in 2022 and served as a broker for three of the MCA transactions JLK entered.[4]  JLK alleges defendant Abe Burger is PMF's Chief Operations Officer[5] and Samuel Brugman is PMF's agent.[6]  JLK alleges that defendant Boost Capital Group, LLC, also served as a broker for one of the four MCA transactions at issue.[7]  Zac Bena is allegedly an employee of Boost.[8] JLK further alleges the defendants are each "an agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer of the other."[9]

---

[2] The court derives facts from public records relating to JLK's bankruptcy and this adversary proceeding only to the extent those facts do not conflict with the complaint and only to provide relevant background information. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("In addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record.") (internal quotation marks omitted); *Z.J. v. Kansas City*, No. 4:15-cv-00621-FJG, 2016 WL 4126569, at *3 (W.D. Mo. Aug. 2, 2016) ("[S]ome materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss.") (citation omitted).

[3] *See* Third Am. Disclosure Statement at 6, *In re JLK Construction, LLC*, No. 23-50034 (Bankr. W.D. Mo. Feb. 8, 2024), Dkt. No. 375.

[4] Second Am. Compl. 7–11 ¶¶ 23, 31–35, Dkt. No. 80, Apr. 18, 2025. The cited pleading was filed in this adversary proceeding. All subsequent citations to the record in this order refer to pleadings filed in this adversary proceeding unless otherwise noted.

[5] *Id.* at 3 ¶ 6.

[6] *Id.* at 3–4 ¶ 7.

[7] *Id.* at 11 ¶ 37.

[8] *Id.* at 4 ¶ 9.

[9] *Id.* at 6 ¶ 18.

After Boost did not answer or otherwise respond to the original complaint, the clerk of court entered default against Boost in this adversary proceeding on January 17, 2024.[10]  The court will, therefore, focus on whether JLK sufficiently alleged its causes of action against the parties who filed the present motion to dismiss: GFE NY, LLC; PMF; the White Road Capital entities; Burger; and Brugman.

The present adversary proceeding arises from a series of transactions JLK entered with GFE NY, LLC and the White Road Capital entities from 2019 to 2022.[11] JLK alleges that in 2019 defendant PMF reached out to JLK to offer its services in business consulting, brokering loans, and lending.[12]  Following PMF's solicitation, JLK and PMF allegedly entered into an agreement under which PMF agreed to provide JLK consulting services.[13]  JLK alleges Boost reached out to JLK in 2020 to provide loan brokering services.[14]  Allegedly using PMF and Boost as brokers, GFE NY, LLC and the White Road Capital entities provided JLK with funds pursuant to contracts executed during that period, and JLK paid PMF and Boost pursuant to the consulting and brokering agreements.[15]

The parties disagree about the correct characterization of the MCA transactions between JLK and GFE NY, LLC and the White Road Capital entities. The defendants argue JLK's contracts with GFE and the White Road Capital entities were for those defendants' purchases of JLK's future monetary receipts—a

---

[10] Clerk's Entry Default, Dkt. No. 42, Jan. 17, 2024.
[11] *See* Ex. 1 to Second Am. Compl. 1; Ex. 2 to Second Am. Compl. 1; Ex. 3 to Second Am. Compl. 1; Ex. 4 to Second Am. Compl. 2; Ex. 5 to Second Am. Compl. 2.
[12] Second Am. Compl. 7 ¶ 21.
[13] *Id.* at 7–8 ¶ 23
[14] *Id.* at 8 ¶ 26.
[15] *See id.* at 9–12 ¶¶ 31–43 (describing contracts and payments).

characterization that aligns with the language the contracts use to describe the parties' transactions.[16]  In contrast, JLK argues the contracts gave rise to "fraudulent loans that Defendants, and each of them, misleadingly labeled [] sale[s] of 'future receipts,'"[17] because JLK, in fact, "sold nothing" to GFE NY, LLC or the White Road Capital entities.[18]  JLK further argues that the effective annual interest rates on these alleged loans ranged between 133% and 358%[19] and that each of the defendants "intentionally misled [JLK] by placing on the first page of each Loan Document . . . a percentage rate of 15% or less."[20]  JLK's contracts with GFE NY, LLC and the White Road Capital entities provide that the contracts "shall be governed by and construed in accordance with the laws of the state of New York."[21]

Between August 2021 and November 2022, JLK made several payments to GFE NY, LLC and the White Road Capital entities pursuant to the terms of the parties' contracts.[22]  JLK alleges the defendants obtained these payments by "t[aking] funds directly from [JLK's] bank account."[23] JLK also alleges it ultimately paid PMF and Boost "commissions" in amounts JLK will prove at trial.[24]

---

[16] *See generally* Exs. 2–5 to Second Am. Compl. (characterizing the transactions as "Purchase[s] and Sale[s] of Future Receivables").

[17] Second Am. Compl. 3 ¶ 5.

[18] *Id.* at 15 ¶ 54.

[19] *Id.* at 38 ¶ 124.

[20] *Id.* at 16 ¶ 55.

[21] Ex. 2 to Second Am. Compl. 7 § 4.5; Ex. 3 to Second Am. Compl. 7 § 4.5; Ex. 4 to Second Am. Compl. 8 § 4.5; Ex. 5 to Second Am. Compl. 8 § 4.5.

[22] *See generally* Exs. 6–9 to Second Am. Compl. (listing payment dates).

[23] Second Am. Compl. 15 ¶ 52.

[24] *Id.* at 24 ¶ 80.

JLK filed a chapter 11 bankruptcy petition with this court in February 2023.[25] Several months later, JLK filed an adversary complaint against several defendants,[26] which the court dismissed without prejudice.[27] JLK then filed its First Amended complaint,[28] which the court dismissed in part but again granted JLK's request for leave to amend.[29] In the present complaint, JLK asserts six counts.[30] In count one, JLK seeks a declaratory judgment that the MCA transactions were disguised loans rather than sales of receivables.[31] In count two, JLK asserts a claim for fraudulent concealment.[32] In count three, JLK seeks a civil judgment against the defendants under the Racketeer Influence and Corporate Organizations Act (RICO).[33] In counts four, five, and six, JLK seeks avoidance and recovery of the transfers it made to the defendants as allegedly fraudulent under federal and state avoidance laws.[34]

The movants ask the court to dismiss count one against PMF, Burger, and Brugman; count three against all movants; and counts four, five, and six against Burger and Brugman. Having summarized the relevant background information, the court turns to the merits of the movants' motion to dismiss under Rule 12(b)(6).

---

[25] Voluntary Pet., *In re JLK Construction, LLC*, No. 23-50034 (Bankr. W.D. Mo. Feb. 13, 2023), Dkt. No. 1.
[26] Compl., Dkt. No. 1, Oct. 25, 2023.
[27] Order Granting Defs.' Mots. Dismiss and Granting Part Pl.'s Mot. Leave Amend, Dkt. No. 60, June 18, 2024.
[28] First Am. Compl., Dkt. No. 61, July 9, 2024.
[29] Order Granting Part and Denying Part Defs.' Mot. Dismiss and Granting Pl.'s Mot. Leave Amend, Dkt. No. 79, Mar. 19, 2025.
[30] Second Am. Compl., Dkt. No. 80, Apr. 18, 2025.
[31] *Id*. at 13–19 ¶¶ 44–64.
[32] *Id*. at 19–25 ¶¶ 65–84.
[33] *Id*. at 25–35 ¶¶ 85–112.
[34] *Id*. at 35–43 ¶¶ 113–137. JLK mistakenly labels these counts as its Fifth, Sixth, and Seventh claims for relief in the complaint but correctly identifies the claims in order in its prayer.

## ANALYSIS

Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, which apply to this adversary proceeding under Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, govern the present motion to dismiss the amended complaint.  Rule 8(a)(2) requires a plaintiff to include in its complaint "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Additionally, when a plaintiff states a claim for fraud, Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud," except that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  To sufficiently plead fraud involving a misrepresentation under Rule 9(b), the plaintiff "must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (requiring the plaintiff to allege the "who, what, where, when, and how" of the fraud) (citation omitted).

Rule 12(b)(6) empowers parties to file motions to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a complaint must include sufficient factual content to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint states a facially plausible claim if the alleged facts provide the defendant with "'fair notice' of the nature of the claim,

[and the] 'grounds' on which the claim rests." *See id.* at 555 n.3 (construing Fed. R. Civ. P. 8(a)(2)).  Under this standard, the court should not dismiss a complaint under Rule 12(b)(6) if the facts pled enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint lends itself to "at least one plausible reading [that] 'allows the court to draw the reasonable inference that the defendant is liable,'" the court should not dismiss the complaint. *Norfolk & Dedham Mut. Fire Ins. Co. v. Rogers Mfg. Corp.*, 122 F.4th 312, 316 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678).

The court takes a multistep approach to determining whether the complaint states a facially plausible claim.  *See, e.g., Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (setting forth the three-step test).  First, the court must determine the elements of each cause of action in the complaint.  *Id.*  Next, the court must consider all allegations together, accept them as true, and construe them in favor of the plaintiff.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (construing *Iqbal*, 556 U.S. at 678–79); *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) (requiring court to construe allegations in favor of plaintiff).  But the court may disregard "formulaic recitation[s] of the elements of a cause of action," *Braden*, 588 F.3d at 594 (citations omitted), and need not accept any allegations that amount to mere "conclusory statements" or "legal conclusion[s] couched as [] factual allegation[s]." *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225–26 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  "In addition, some factual allegations may be so indeterminate that they require 'further factual enhancement' in order to state a

claim." *Braden*, 588 F.3d at 594 (citations omitted). Finally, the court must analyze the counts individually to determine whether the complaint states a viable claim for each element of that cause of action. *See, e.g.*, *Santiago*, 629 F.3d at 130 (analyzing each count individually to "determine whether they plausibly give rise to an entitlement for relief") (citation omitted).

Applying this test, the court will analyze the counts at issue in JLK's second amended complaint below. For the reasons the court explained in its analysis of choice of law in its order granting the defendants' motion to dismiss the original complaint,[35] to the extent the complaint implicates state law, the court analyzes the sufficiency of each count under New York law.

## I.    Declaratory Relief

In count one, JLK seeks a declaratory judgment against all defendants determining that the MCA transactions it entered with GFE NY, LLC and the White Road Capital entities are disguised loans and not sales of receivables. The defendants do not challenge whether JLK pleads that the transactions are loans. Instead, the defendants argue that JLK cannot state a claim for declaratory relief against any defendant except GFE NY, LLC and the White Road Capital entities because the other defendants were not parties to the contracts.

Federal courts can issue declaratory relief pursuant to 28 U.S.C. § 2201. To determine whether the court has jurisdiction to grant declaratory relief, the court must decide whether there is "a substantial controversy, between parties having

---

[35] Order Granting Defs.' Mots. Dismiss and Granting Part Pl.'s Mot. Leave Amend. 12–23.

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Courts additionally consider whether (1) a declaratory judgment "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the legal proceedings." *Alsager v. Dist. Ct. of Polk Cty.*, 518 F.2d 1160, 1163–64 (8th Cir. 1975) (quoting Edwin Borchard, *Declaratory Judgments* 299 (2d ed. 1941)). *See also Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971) (applying the same additional factors).

The court determines JLK may plead the declaratory relief count against PMF, Burger, and Brugman even though JLK did not allege they were parties to the contract. A substantial controversy undoubtedly exists between JLK, on the one hand, and PMF, Burger, and Brugman, on the other, because JLK pleads several counts against those defendants, including a count for fraud that is not at issue in this motion to dismiss and that is premised on the theory that certain defendants mischaracterized the MCA transactions. The outcome of the declaratory relief count will clarify and settle the legal relations at issue and will afford relief from uncertainty because whether the MCA transactions are loans will affect whether PMF, Brugman, and Burger mischaracterized the MCA transactions under JLK's fraud count.[36]

The court DENIES the defendants' motion to dismiss the declaratory relief

---

[36] The declaratory relief count would also be relevant to the RICO count, but the court dismisses the RICO count against all movants with prejudice for reasons explained later in this order.

count against PMF, Brugman, and Burger.

## II.  Racketeering

JLK alleges defendants GFE NY, LLC, the White Road Entities, PMF, Brugman, Burger, Boost and Bena engaged in racketeering under 18 U.S.C. § 1962(c) and seeks trebled damages under 18 U.S.C. § 1964(c). Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

To state a claim under § 1962(c), the plaintiff must plead three elements: (1) that the defendant committed racketeering offenses through a pattern of racketeering activity or a collection of an unlawful debt, 18 U.S.C. § 1962(c); *see also United States v. Bennett*, 44 F.3d 1364, 1374 (8th Cir. 1995) (requiring the plaintiff to establish "that the defendant's participation was through a pattern of racketeering activity"); (2) that the defendant's conduct was the proximate cause of the plaintiff's injury, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008); and (3) that the defendant participated in the conduct of an enterprise's affairs, *Bennett*, 44 F.3d at 1374.

Here, JLK alleges the defendants engaged in collection of unlawful debts. Specifically, JLK alleges that the MCA transactions it entered into with GFE NY, LLC and the White Road Capital entities gave rise to disguised loans rather than sales of receivables, and because the interest rates on the loans far exceeded New

York's usury cap, the defendants violated § 1962(c) by participating in collecting unlawful debts.

In its prior order, the court determined JLK adequately pled its request for declaratory relief that the MCA transactions gave rise to disguised loans—a characterization that is fundamental to JLK's claim that the defendants violated the RICO statute by engaging in the collection of unlawful debts. The court, however, previously dismissed the RICO count, explaining that JLK failed to allege that each defendant participated in the collection of unlawful debts under the first RICO element and failed to plead that the defendants conducted the affairs of an enterprise under the third element.

The court will again analyze the first and third RICO elements, beginning with the third for ease of understanding. For the reasons explained below, the court GRANTS the movants' motion to dismiss and dismisses JLK's RICO count with prejudice.

**A.     JLK Fails to Plead the Movants Participated in the Conduct of an Enterprise's Affairs**

As previously stated, the RICO Act requires plaintiffs plead that each defendant conducted the affairs of an enterprise. *Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir. 1982) ("The RICO Act proscribes conduct in which one party . . . acts upon . . . the enterprise.") (internal quotation marks omitted). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Additionally, to plead an associated-in-fact enterprise a plaintiff must

allege "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

A RICO plaintiff, in addition to alleging an enterprise, must also identify the defendants as "culpable persons" who are distinct from the enterprise, *Bennett*, 685 F.2d at 1061; *see also United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996) ("The enterprise must be distinct from the person named as the RICO defendant."), and who conducted the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("*[S]ome* part in directing the enterprise's affairs is required."); *see also United Food & Com. Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853–57 (7th Cir. 2013) (holding that plaintiff failed to allege that defendants conducted the affairs of the enterprise and upholding dismissal of RICO claims). To plead that the culpable persons conducted the affairs of the enterprise, the plaintiff must allege that each culpable person "participated in the operation or management of the [enterprise] itself." *Reves*, 507 U.S. at 186.

Though a corporation can be a culpable person, a RICO plaintiff cannot subvert the requirement to plead an enterprise distinct from the culpable persons who operated it by simultaneously characterizing a corporation and its officers as culpable persons and alleging the corporation and its officers comprised an associated-in-fact enterprise. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162 (2001) (explaining the person-enterprise distinction).   "Because a corporation can only

13

function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). Thus, a corporation cannot generally be liable as a culpable person under the RICO statute for operating itself.

For the reasons the court explains below, it determines JLK does not sufficiently allege that culpable persons conducted the affairs of a distinct enterprise.

### 1.  JLK Does not Clearly Identify an Enterprise

At the outset, the court notes that JLK makes several allegations in its RICO count that might wrongly lead an unfamiliar reader to believe JLK is attempting to plead an associated-in-fact enterprise consisting of all of the defendants. For example, JLK alleges that the culpable persons "are associated in fact for the common purposes of collecting on an unlawful debt"[37] and "have had ongoing relations with each other for the purpose of originating, underwriting, servicing, and collecting upon unlawful debts."[38] Because these allegations focus on the relationship among the culpable persons rather than the relationship between the culpable persons and the alleged enterprise, they appear to suggest that JLK is attempting to allege an associated-in-fact enterprise consisting of all of the defendants.

Although the court might have otherwise been inclined to construe the complaint as alleging an associated-in-fact enterprise, the court will not do so here because (1) JLK's counsel stated at oral argument that JLK was not attempting to

---

[37] Second Am. Compl. 33 ¶ 107.
[38] *Id.* at 34 ¶ 109.

allege an associated-in-fact enterprise;[39] (2) JLK identifies non-defendant "G.F.E. Holdings, LLC" as the RICO enterprise (rather than  an associated-in-fact enterprise); and (3) JLK does not clearly allege the additional structural features required to plead an associated-in-fact enterprise.  Thus, for the purposes of analyzing the rest of the RICO elements at issue, the court assumes that JLK is not attempting to allege an associated-in-fact enterprise.

Unfortunately, JLK also does not clearly identify or consistently describe the alleged enterprise and culpable persons. Instead, JLK refers to at least three entities: "G.F.E. Holdings, LLC," "GFE Holdings LLC," and "GFE Holdings,"[40] and the extent to which the identities of these entities might overlap is unclear at best. JLK alleges "G.F.E. Holdings, LLC" is the enterprise[41] but defines "G.F.E. Holdings, LLC" as "GFE Holdings"[42] and says that the enterprise is an "entity of unknown form."[43] JLK also says that the "Delaware secretary of state identifies two similar entities, GFE Holdings LLC and G.F.E. Holdings LLC."[44] The purpose of this allegation is unclear. "GFE Holdings LLC" is not a defendant and is never mentioned again in the complaint.

JLK alleges that defendants GFE NY, LLC, the White Road Capital entities, PMF, Brugman, Burger, Boost, and Bena are culpable persons.[45] Confusingly, JLK, throughout the complaint, alleges both White Road Capital entities do business as

---

[39] Tr. Hr'g Mot. Dismiss Adversary Proceeding 12:22–24, Dkt. No. 95, July 14, 2025.
[40] Second Am. Compl. 33 ¶ 105.
[41] *Id.*
[42] *Id.*
[43] *Id.* at 33 ¶ 106.
[44] *Id.* at 33 ¶ 105.
[45] *Id.* at 32–33 ¶¶ 102–04.

"GFE Holdings"[46] (which is also JLK's defined shorthand for the alleged RICO
enterprise, "G.F.E. Holdings, LLC"), and that the White Road Capital entities are
successor entities to GFE NY, LLC.[47]

If you are confused, you are in good company. In the table below, the court
shows in yellow (Y) and green (G) the overlapping allegations concerning the various
GFE and White Road Capital entities.

| Name of Entity: | Enterprise/Culpable Person | Defined As: | Doing Business As: | Successor to: |
|---|---|---|---|---|
| G.F.E. Holdings, LLC | Enterprise | "GFE Holdings" (G) | | |
| "GFE NY, LLC" (Y) | Culpable Person | "GFE" | | |
| White Road Capital LLC Series 127009 | Culpable Person | | "GFE Holdings" (G) | "GFE NY, LLC" (Y) |
| White Road Capital LLC Series 120785 | Culpable Person | | "GFE Holdings" (G) | "GFE NY, LLC" (Y) |
| GFE Holdings, LLC | | | | |

JLK's confounding decision to label "G.F.E. Holdings, LLC" (the alleged
enterprise) as "GFE Holdings" adds to the confusion by suggesting that JLK might
be referring to either the enterprise or the White Road Capital entities when it refers
to "GFE Holdings" because JLK alleges the White Road Capital entities do business
as "GFE Holdings." Furthermore, when JLK refers to defendant GFE NY, LLC (which
JLK defines as "GFE"), it is unclear whether it is referring to one of the White Road
Capital entities because JLK alleges both White Road Capital entities are successors
to GFE NY, LLC.

---

[46] *Id.* at 5 ¶ 16.
[47] *Id.* at 33 ¶105.

As a result of these disorienting allegations, the court cannot discern the identity of the purported enterprise and, therefore, whether JLK alleges an enterprise under 18 U.S.C. § 1961(4).

## 2. JLK Does not Allege an Enterprise Distinct from Culpable Persons

These allegations not only obscure the identity of the alleged enterprise, but they also make it impossible for JLK to plead an enterprise distinct from the alleged culpable persons. JLK concludes without additional factual support that G.F.E. Holdings, LLC (the alleged enterprise) is distinct from the alleged culpable persons,[48] but in fact, JLK's allegations suggest the opposite. Again, JLK defines "G.F.E. Holdings, LLC" (the alleged enterprise) as "GFE Holdings," but JLK also alleges the White Road Capital entities do business as "GFE Holdings." These conflicting allegations make it impossible to discern whether JLK is referring to the White Road Capital entities when making allegations concerning the enterprise.  JLK further obscures whether the alleged enterprise G.F.E. Holdings, LLC is distinct from the culpable persons by alleging that the White Road Capital entities are successors to defendant GFE NY, LLC. Through these allegations, G.F.E. Holdings, LLC appears to be the same entity as one or more of the alleged culpable persons, and if not, JLK fails to plead how G.F.E. Holdings, LLC is sufficiently distinct from the alleged culpable persons to satisfy the RICO element.

Moreover, JLK does not clarify the relationship between the alleged enterprise G.F.E. Holdings, LLC and the culpable persons elsewhere in the complaint. Many of

---

[48] *Id.* at 33 ¶¶ 103, 105.

the more specific facts describing the conduct of each party reside outside the RICO

section of JLK's complaint. But G.F.E. Holdings, LLC is not once mentioned outside

of the RICO count. The majority of the allegations in the complaint concern

interactions between GFE NY, LLC, the White Road Capital entities, PMF,

Brugman, Boost and Bena, with no reference to G.F.E. Holdings, LLC, GFE Holdings

LLC, or GFE Holdings. Thus, the only allegation concerning the distinctiveness

between the enterprise and culpable persons is one conclusory statement that G.F.E.

Holdings, LLC is the RICO enterprise—a statement that lacks any additional factual

support and appears to contradict allegations found elsewhere in the complaint. For

these reasons, JLK fails to plead an enterprise distinct from the alleged culpable

persons.

### 3. JLK Fails to Allege Each Culpable Person Conducted the Affairs of the Enterprise

Finally, JLK also fails to plead that the culpable persons conducted the affairs

of the enterprise because it does not allege that each defendant participated in the

management or operation of the alleged enterprise, G.F.E. Holdings, LLC.

To explain, the court will first reiterate the roles JLK alleges each defendant

played in brokering, creating, and collecting the MCA transactions at issue. JLK

alleges defendant GFE NY, LLC entered two MCA transactions with JLK,[49] and each

White Road Capital entity entered one MCA transaction with JLK.[50] JLK alleges that

PMF brokered three of the MCA transactions,[51] and Boost brokered one MCA

---

[49] *Id.* at 9–10 ¶¶ 31–34.
[50] *Id.* at 10–11 ¶¶ 35–37.
[51] *Id.* at 9–11 ¶¶ 31–35.

transaction.[52] JLK alleges that Burger was the chief operating officer for PMF and alleges that Brugman acted as PMF's agent in brokering the MCA transactions.[53] Similarly, JLK alleges Bena acted as Boost's agent in brokering a MCA transaction.[54]

Notably, JLK makes no reference to any GFE Holdings entity until the RICO count, and in the RICO section, JLK makes virtually no allegations explaining how the alleged culpable persons managed or operated the affairs of G.F.E. Holdings, LLC. JLK alleges that G.F.E. Holdings, LLC was "created to manage and provide legitimate lending services to businesses" but was "usurped" for the "nefarious purposes" of the culpable persons.[55] JLK, however, does not elaborate any further on these conclusory allegations or otherwise allege the defendants operated G.F.E. Holdings, LLC. Instead, several of its allegations suggest that, rather than conducting the affairs of the alleged enterprise, the culpable persons were conducting the affairs of themselves or of GFE NY, LLC and the White Road Capital entities. For example, JLK alleges that "the Defendants . . . engaged in a common goal of soliciting, funding, servicing, and collecting upon usurious loans"[56] and that the defendants "devised a payment scheme . . . where the LENDERS caused daily payments to be withdrawn."[57] Here, JLK defines the lenders as GFE NY, LLC and the White Road Capital entities and alleges that they caused daily payments to be withdrawn, making no allegations of fact that would enable the court to reasonably infer that the

---

[52] *Id.* at 11 ¶ 37.
[53] *Id.* at 20–21 ¶¶ 69–72.
[54] *Id.*
[55] *Id.* at 33 ¶ 106.
[56] *Id.* at 33–34 ¶ 107.
[57] *Id.*

defendants used G.F.E. Holdings, LLC to accomplish these alleged goals and schemes.

JLK may come close to alleging this element when it makes a couple of vague allegations including that the culpable persons used the enterprise "to pursue [] unlawful goals"[58] and "for collection."[59] But these allegations appear to contradict allegations elsewhere in the complaint that explain that GFE NY, LLC and the White Road Capital entities facilitated collection of the MCA transaction payments through ACH debit. Thus, JLK does not explain how G.F.E. Holdings, LLC was used for collection or to pursue the defendants' alleged unlawful goals. As to defendants Brugman and Burger, JLK's allegations exclusively support the inference that they are conducting PMF's affairs. JLK does not make any specific allegations concerning Burger except that he was PMF's chief operating officer, and JLK alleges on several occasions that Brugman acted on behalf of PMF when communicating with JLK and brokering multiple MCA transactions. Thus, without more, JLK fails to allege that Burger or Brugman conducted the affairs of the purported enterprise.

JLK also makes several additional allegations further obscuring whether JLK alleges each defendant was conducting the affairs of the enterprise. JLK alleges, "each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer of the other Defendant,"[60] and "acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint

---

[58] *Id.* at 34 ¶ 108.
[59] *Id.* at 34 ¶ 109.
[60] *Id.* at 6 ¶ 18.

venture."[61] JLK further alleges that "[e]ach one of Defendants' alleged actions was done with the permission and consent of each of the other Defendants."[62] Similarly, JLK alleges that PMF acted as GFE NY, LLC and the White Road Capital entities' "agent, servant, employee, co-conspirator, alter-ego and/or join venturer."[63]

JLK included similar allegations in both of its prior complaints, and both times, the court warned that these allegations hindered JLK's ability to successfully plead its RICO count. Nevertheless, these allegations remain and continue to muddle JLK's RICO allegations because JLK does not make it clear whether each defendant is conducting the affairs of the enterprise, itself, or some other defendant.

In sum, JLK fails to plead that the culpable persons conducted the affairs of the enterprise because (1) JLK does not sufficiently identify an enterprise under § 1961(4); (2) JLK fails to allege an enterprise distinct from the culpable persons; and (3) JLK fails to allege how each culpable person participated in the management or operation of the enterprise.

These deficiencies alone require the court to dismiss the RICO count against all movants. But the racketeering count has additional deficiencies with respect to Burger that merit additional explanation.

## B.    JLK Fails to Plead that Burger Participated in the Collection of an Unlawful Debt

Next, to state a plausible RICO claim premised on unlawful debt collection, a plaintiff must sufficiently plead that each RICO defendant participated in the

---

[61] *Id.*
[62] *Id.*
[63] *Id.* at 6 ¶ 19.

collection of an unlawful debt. *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 248 (2d Cir. 1985) (citing 18 U.S.C. §§ 1962(a) and (c)). The plaintiff, however, does not need to allege a pattern of activity under the debt-collection theory (unlike when the plaintiff brings a RICO claim for a pattern of racketeering activity); the plaintiff only needs to allege the culpable person participated in collecting a single unlawful debt. *United States v. Grote*, 961 F.3d 105, 119 (2d Cir. 2020) ("RICO offenses may be predicated on a *single instance* of collection of an unlawful debt.") (emphasis added). The plaintiff also does not need to allege that each culpable person individually collected *payment* on the unlawful debt. Instead, courts have liberally construed participation in the collection of unlawful debt to include any "single act which would tend to induce another to repay on an unlawful debt." *United States v. Eufrasio*, 935 F.2d 553, 577 (3d Cir. 1991) (citing *United States v. Pepe*, 747 F.2d 632, 673–75 (11th Cir. 1984)); *Golden Foothill Ins. Servs., LLC v. Spin Cap., LLC*, 24-cv-8515 (AS), 2025 WL 2402616, at *10 (S.D.N.Y. Aug. 19, 2025) (concluding allegations that defendants "induc[ed] plaintiffs to take out a loan to cover the balance of the agreements" satisfied burden to plead "the defendant[s] aided collection of the debt *in some manner*") (quoting *United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986)). Thus, courts have held that an actual exchange of money is not required to plead participation in the collection of an unlawful debt. *Eufrasio*, 935 F.2d at 576; *see also Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 148 (3d Cir. 2016) (determining that repossession of collateral can constitute collection of an unlawful debt); *Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882, 894 (N.D. Cal. 2021)

(determining that evidence that RICO defendants created a predatory lending scheme could be sufficient for a jury to find that the defendants participated in the collection of an unlawful debt).

The court concludes that JLK does not plead facts demonstrating that Burger participated in the collection of an unlawful debt. As previously explained, the movants do not contest that JLK successfully pleads that the MCA transactions were loans, and in the court's most recent order, it concluded that JLK adequately pled that the MCA transactions at issue were loans with interest rates exceeding more than twice the legal interest rate in New York. Thus, JLK pleads the existence of unlawful debts under 18 U.S.C. § 1961(6). The movants instead argue that JLK does not directly connect any of the culpable persons' alleged conduct to the collection of an unlawful debt.

The court agrees that JLK does not plead facts supporting the inference that Burger participated in the collection of unlawful debts. The only allegation concerning Burger outside of the RICO count is the allegation that he served as PMF's chief operating officer. JLK pleads that PMF and Brugman were involved with brokering three of the MCA transactions at issue, but JLK never makes any specific allegations explaining any manner in which Burger was involved in the collection of unlawful debt. The only allegations against Burger are generic allegations that list all of the defendants as participants in the alleged racketeering scheme. These allegations, without additional factual enhancement, are insufficient to adequately plead a RICO count against Burger because they do not explain whether and to what

extent Burger was involved with brokering the MCA transactions at issue in this adversary proceeding.

For all these reasons, dismissal of JLK's RICO count is appropriate. The movants ask the court to dismiss with prejudice, and for the reasons explained below, the court determines that dismissal with prejudice is appropriate.

### C.    Dismissal of the RICO Count with Prejudice is Appropriate

Rule 15(a)(2) of the Federal Rules of Procedure allows "a party [to] amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15. The movants ask the court to dismiss JLK's RICO count with prejudice. JLK asks for yet another opportunity to amend its complaint. For the reasons explained below, the court denied JLK's request for leave to amend its RICO count and DISMISSES the RICO count with prejudice against all movants and DENIES JLK's request for leave to amend.

The court has discretion to grant or deny a party's request for leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although courts liberally permit plaintiffs to amend their complaints, the right to amend is not absolute. *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989). Indeed, "a dismissal with prejudice is typically appropriate when a plaintiff has shown 'persistent pleading failures' despite one or more opportunities to amend." *Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1080 (D. Minn. 2021) (citations omitted). The party seeking leave to amend must demonstrate that "amendment would be able to save an otherwise meritless claim." *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016) (quoting *Plymouth Cnty. v.*

*Merscorp, Inc.,* 774 F.3d 1155, 1160 (8th Cir. 2014)). If the court determies that amendment would be futile, then it should deny the plaintiff's request to amend. *Id.* (citing *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009)). Amendment is futile when a plaintiff does not adequately address the court's prior rejection of the plaintiff's theories, *Anderson v. Bank of the W.*, 23 F.4th 1056, 1061 (8th Cir. 2022), and when the plaintiff fails to submit a proposed amended complaint or otherwise clarify what a sufficiently pled complaint would contain, *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009).

In this case, the court is sensitive to the gravity of the RICO allegations at issue. Courts have noted that civil RICO is "an unusually potent weapon – the litigation equivalent of a thermonuclear device," *Nettles v. UMB Bank, N.A.*, No. 03-00082-CV-W-GAF, 2010 WL 11618679, at *3 (W.D. Mo. Sep. 13, 2010) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)), and have observed the "stigmatizing effect" RICO allegations can have against the named defendants. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citing *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)). Courts have also recognized the high costs of ongoing litigation in RICO cases. *See Nettles*, 2010 WL 11618679, at *3 (noting that "defending a civil RICO claim can be very costly regardless of the claim's validity"); *see also High Sch. Servicos Educacionais, LTDA v. Choi*, No. 4:21-CV-00029-DGK, 2023 WL 10476025, at *7 (W.D. Mo. Jan. 13, 2023) (acknowledging "time-consuming and expensive RICO discovery" when dismissing RICO count with prejudice). As a result, courts are often inclined to dispense of

meritless RICO claims at the pleading stage. *Katzman*, 167 F.R.D. at 655.

The court afforded JLK three opportunities to plead its RICO count, and each time, JLK failed to adequately plead facts supporting its legal assertions and conclusory characterizations of unpled facts. Not only does the Second Amended Complaint fail to plead a RICO cause of action, the Second Amended Complaint is arguably worse than its predecessors. To explain, the court will now describe JLK's previous attempts at pleading its RICO count.

In its first complaint, JLK attempted to assert a RICO count premised on wire fraud, extortionate extensions of credit, and collection of an unlawful debt against defendants GFE NY, LLC, the White Road Capital entities, PMF, and Boost.[64] The court dismissed the RICO count for several reasons including that (1) JLK did not sufficiently plead the elements of each RICO predicate act;[65] (2) JLK did not plead a pattern of racketeering activity as required to plead wire fraud and extortionate extensions of credit;[66] (3) JLK did not plead an enterprise distinct from the culpable persons;[67] and (4) JLK did not plead proximate cause.[68]

In the court's first dismissal order, the court set out a framework for alleging a RICO cause of action and warned that boilerplate and conclusory language would not suffice under Rule 12(b)(6). The court also warned "failure to adequately describe the relationships between the defendants [] makes it impossible for the court to

---

[64] Compl. 19–21 ¶¶ 76–87.
[65] Order Granting Defs.' Mots. Dismiss and Granting Part Pl.'s Mot. Leave Amend 33–36.
[66] *Id.* at 37–39.
[67] In fact, JLK did not identify an enterprise or culpable persons. *Id.* at 40–42.
[68] *Id.* at 42–45.

discern whether JLK pleads a 'culpable person' distinct from the enterprise."[69] The court, among other things, admonished JLK for including in the background section of the complaint, allegations that each defendant acted as an "agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer"[70] of each other defendant because these allegations made it impossible to discern whether any party was conducting the affairs of the enterprise or whether JLK pled an enterprise distinct from the culpable persons.

JLK's first amended complaint suffered a similar fate. In its first amended complaint, JLK alleged GFE NY, LLC was the enterprise[71] and added additional defendants, pleading its RICO count against Boris Musheyev (who is no longer a named defendant), PMF, Burger, Brugman, Boost, and Bena.[72] This time, JLK limited its RICO count to collection of an unlawful debt. But again, JLK failed to plead an enterprise distinct from the alleged culpable persons, and did not allege specific instances of racketeering activity against each culpable person.

Much to the court's dismay, JLK again relied on conclusory allegations that did not identify specific instances of racketeering activity. JLK also, once again, alleged that that each defendant acted as an "agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer" of each other defendant.[73] Thus, once more, the court cautioned JLK that these allegations blur the line between the alleged

---

[69] *Id.* at 41.
[70] *Id.* at 40–42; Compl. 5 ¶ 14.
[71] First Am. Compl. 33 ¶ 106.
[72] *Id.* at 32 ¶ 104.
[73] *Id.* at 6 ¶ 19.

enterprise and culpable persons and prevent JLK from clearly alleging that each defendant conducted the affairs of the enterprise.[74] The court, nevertheless, granted JLK's leave to amend despite repeated pleading failures.

Now, on its Second Amended Complaint, JLK alleges a new enterprise, G.F.E. Holdings, LLC—an entity not once mentioned in either previous iteration of JLK's complaint. JLK haphazardly labels the defendants and adds new allegations that blur the distinction between the enterprise and culpable persons. As explained above, JLK once again does not plead an enterprise distinct from the alleged culpable persons. JLK inexplicably alleges for a third time that each defendant acted as an "agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer"[75] of each other defendant and alleged that "[e]ach one of [the] Defendants' alleged actions was done with the permission and consent of each of the other Defendants."[76]

JLK does not convincingly argue why the court should grant leave to amend and give JLK a fourth chance to plead its RICO count. JLK says that "[n]one of the indicia of compelling reasons to deny leave to amend . . . are present in this action."[77] The court disagrees. JLK has persistently failed to plead its RICO count, in part because it failed to plead the same RICO element three times. Indeed, because of JLK's confusing labeling and allegations, the second amended complaint is more difficult to understand than JLK's first two complaints, and JLK remains far from

---

[74] Order Granting Part and Denying Part Defs.' Mot. Dismiss and Granting Pl.'s Mot. Leave Amend 31–32.

[75] Second Am. Compl. 6 ¶ 18.

[76] Id.

[77] JLK Construction LLC's Opp'n Mot. Dismiss First, Third, Fifth, Sixth and Seventh Claims Relief Second Am. Compl. ("JLK's Opp'n Mot. Dismiss") 8, Dkt. No. 86, May 23, 2025.

pleading a discernible, plausible RICO count.

JLK also argues leave for amend is appropriate because these are "complex issues and claims raised."[78] The court agrees that these matters are complex. But that does not mean the court will provide JLK with endless opportunities to amend its complaint. Furthermore, JLK has continually made the same or similar allegations undermining its RICO count despite the court alerting JLK to these issues in its two prior dismissal orders.

JLK also does not explain how further amendment could cure the deficiencies in this complaint and does not attach a proposed amended complaint to any of its pleadings. At oral argument, JLK's counsel, despite explicitly stating that JLK was not attempting to plead an associated-in-fact enterprise, suggested that it could plead an association in a subsequent amended complaint. But JLK already had three opportunities to plead an associated-in-fact enterprise and did not. Moreover, it is unclear whether JLK could plead the additional elements of an associated-in-fact enterprise, and pleading an associated-in-fact enterprise would not alone cure the remaining deficiencies in JLK's RICO count. For these reasons, further amendment would be futile.[79]

---

[78] *Id.*

[79] The court notes that JLK filed two related adversary proceedings (*JLK Construction, LLC v. EIN Cap, Inc. (In re JLK Construction, LLC)*, Case No. 23-50034, Adv. No. 23-4031 (Bankr. W.D. Mo. Oct. 25, 2023); *JLK Construction, LLC v. Premium Merchant Funding 18, LLC (In re JLK Construction, LLC)*, Case No. 23-50034, Adv. No. 23-4032 (Bankr. W.D. Mo. Oct. 25, 2023)) in which JLK also made racketeering allegations. The defendants moved to dismiss the RICO count in the second amended complaints in those proceedings as well. The court, however, denied the defendants' motion to dismiss with respect to the RICO count in those cases. But JLK's RICO allegations in the present adversary proceeding differ significantly from those in the two related adversary proceedings. First, in the related adversary proceedings, JLK clearly identifies a corporate enterprise, but here, JLK confusingly

Thus, because of JLK's persistent pleading failures, and because the court concludes that amendment would be futile, the court DENIES JLK's request for leave to amend and DISMISSES the RICO count against the movants with prejudice.

## III.    Avoidance and Recovery of Transfers

In the final three counts of its complaint, JLK seeks to avoid and recover transfers it allegedly made under the MCA agreements. JLK asserts these counts against all defendants. The movants ask the court to dismiss the avoidance and recovery counts against Burger and Brugman[80] because JLK makes no allegations concerning those defendants. JLK responds by arguing Burger and Brugman are liable as subsequent transferees.[81]

---

defines the enterprise and refers to it as an entity of unknown form. Second, in the other adversary proceedings, JLK does not label the defendants in a way that obscures the relationships between the defendants and whether JLK pleads an enterprise distinct from the alleged culpable persons. This issue is particularly salient because JLK alleged in all three adversary proceedings that each defendant acted as an "agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer" of each other defendant. In the related adversary proceedings, the court determined that these allegations were not fatal to JLK's RICO count because there were more specific allegations found elsewhere in the complaint that described the relationships between the defendants. Here, there are no other more specific allegations, and JLK makes additional allegations that only reinforce a conclusion that the enterprise and culpable persons are not distinct. Third, in the other adversary proceedings, JLK sufficiently alleges how each culpable person conducted the affairs of the enterprise; however, here, JLK makes virtually no specific allegations explaining how each culpable person conducted the affairs of the enterprise. Instead, most allegations throughout the complaint suggest that the culpable persons either conducted the affairs of other culpable persons or that the culpable persons conducted their own affairs. Because of these critical differences between the Second Amended Complaint in this adversary proceeding versus the Second Amended Complaints in the related adversary proceeding, JLK fails to plead multiple RICO elements. The court also notes that, unlike in the related adversary proceedings, JLK's current attempt to plead a RICO count in this adversary proceeding is farther from pleading the necessary elements than its prior attempt, making a RICO count seem less viable in this adversary proceeding.

[80] Though the movants request dismissal of the counts against "PMF, Burger and Brugman" in the introductory paragraph and conclusion paragraphs of the motion to dismiss, *see* Defs.' Mot. Dismiss 2–3, 7, Dkt. No. 85, May 2, 2025, the court discerns from the substantive paragraphs of the motion, *id.* at 5–6, the reply to JLK's response to the motion to dismiss, *see* Reply Resp. Defs.' Mot. Dismiss 5–6, Dkt. No. 90, June 16, 2025, and oral argument that the movants exclusively seek dismissal against Burger and Brugman.

[81] JLK's Opp'n Mot. Dismiss 7–8.

The court agrees with the movants. JLK makes no allegations concerning Burger and Brugman's receipt of any transfers, as subsequent transferees or otherwise, and does not allege facts from which the court could reasonably infer that Burger and Brugman are liable as subsequent transferees. Accordingly, the court DISMISSES the final three counts of JLK's second amended complaint against Burger and Brugman without prejudice to JLK later bringing causes of action against Burger and Brugman as subsequent transferees.

With respect to these counts, justice compels the court to grant JLK's request for leave to amend. Though the court's patience grows thin, the deficiencies in JLK's avoidance counts are not compelling enough reasons to deny JLK's request for leave to amend. The record does not sufficiently establish at this stage that amendment of these counts would prejudicially delay this adversary proceeding, that JLK seeks amendment in bad faith, or that amendment would be futile.  Consequently, the court GRANTS JLK's motion for leave to amend with respect to its avoidance counts.

## CONCLUSION

For the reasons explained above, the court DENIES the movants' motion to dismiss count one. The court GRANTS the movants' motion to dismiss count three against all movants and DISMISSES count three with prejudice. The court also GRANTS the movants' motion to dismiss counts four, five, and six against defendants Burger and Brugman. The court further GRANTS JLK's request for leave to amend only as to counts four, five, and six.

JLK may file an amended complaint as permitted by this order on or before

November 12, 2025.  The defendants will have until December 12, 2025, to file their

answer or responsive pleading to whatever complaint is then pending.

     IT IS SO ORDERED.

Dated: 10/15/2025                /s/ Brian T. Fenimore_____
                                      United States Bankruptcy Judge